707 P.2d 404

**Steven GIACOBBI and Edward Stanek, II, Plaintiffs-Respondents,**

v.

**Charles L. HALL, Defendant-Appellant.**

**No. 15644.**

Supreme Court of Idaho.

Sept. 19, 1985.

Terry Thomas Uhling, Twin Falls, for defendant-appellant.

Janet C. Wygle, Ketchum, for plaintiffs-respondents.

HUNTLEY, Justice.

The central issue of this appeal is whether procedures undertaken by Blaine County were adequate to notify Hall, a property owner, prior to tax deficiency sale of his property.

The stipulated facts are as follows. In March, 1979, Charles Hall purchased a lot in Blaine County from LAM Enterprises. Hall took title by warranty deed, prepared by Sun Valley Title Company. The deed failed to list Hall's address, despite the requirement of I.C. § 55–601 that a grantee's name and address be on a deed. At the same time Hall executed a deed of trust in favor of Carl Curtis to secure payment of $24,000. At the request of Sun Valley Title Company the warranty deed and deed of trust were recorded in the Blaine County Recorder's office. The deed of trust was acknowledged by Hall in Pitkin County, Colorado, where he lived at the time.

Because neither recorded document contained Hall's address, the Blaine County Assessor's office, pursuant to its own internal policy, posted Hall's address on the tax rolls as Box ____, Ketchum, Idaho, 83340. The Blaine County Treasurer sent annual real estate tax notices for the years 1979 through 1982 to Hall at the Box ____ address. Reminder notices were also sent to that address. During this time, Hall continued to live in Aspen, Pitkin County, Colorado. He did not receive any of the Blaine County annual tax statements, nor did he receive any of the reminder notices.

The property taxes went unpaid from 1979 through 1982. Consequently the Treasurer made a tax delinquency entry in 1980. In September, 1982, the Blaine County Treasurer sent a notice of pending issuance of tax deed for the subject property to Hall at the Box ____ address by certified mail with return receipt requested. The notice was returned marked as undelivered. The Blaine County Treasurer then searched the county records and the local phone book and contacted the U.S. Post Office in Ketchum in an effort to obtain Hall's address, but no address was found. Therefore the Treasurer published a copy of the notice of pending issuance of tax deed in the local Ketchum paper for four consecutive weeks in September and October of 1982; the last notice was published two months and twenty-two days before issuance of the tax deed. In January, 1983, the Treasurer executed a tax deed conveying property to Blaine County.

In May, 1983, Blaine County sold the property by quitclaim deed to the plaintiffs, Giacobbi and Stanek. Giacobbi and Stanek then filed suit to quiet title to the property. Stanek obtained Hall's address from the Sun Valley Title Company in order to serve Hall with a complaint and summons in the quiet title action. At all times since the sale of the property in 1979 Sun Valley Title Company knew Hall's address. Though the Blaine County Recorder's office sometimes contacts title companies in order to locate a taxpayer's address, it did not do so in this case.

Hall counterclaimed claiming Stanek and Giacobbi had no valid interest in the property, and cross-claimed against Blaine County on the ground that the County had failed to provide him proper notice of the tax deficiency thereby denying him due process.

The trial court entered judgment quieting title in Stanek and Giacobbi. It ruled that Hall did not use reasonable diligence by virtue of his having allowed the tax deficiencies to occur, in that he did not comply with I.C. § 55–601,[1] and that equity could not allow voiding of the tax deed if the County had acted properly. The court further ruled the Blaine County Treasurer had acted properly in that she was required only to search the county records for an address for Hall. The court then concluded that I.C. § 63–1126B(1)(a)[2] only requires the treasurer to send notice to an owner "at their last known address," and that there was never a "last known address" for Hall because there had never been an address on the warranty deed. Only had there been an original address, the court stated, would I.C. §§ 63–1126B(1)(a) and (b), requiring a "reasonable and diligent search and inquiry in attempting to locate and serve the record owner" be applicable. Finally the court determined that the publication was adequate notice, and that Hall's due process rights had not been violated.

Hall appeals contending the trial court erred as follows:

(1) In ruling that Hall's failure to have his address on the deed constituted "unclean hands," depriving him of the right to equitable relief, and that Hall's failure to comply with I.C. § 55–601 relieved the County of the obligation under I.C. § 63–1126B to perform a reasonable and diligent search and inquiry for Hall's address prior to issuing a tax deed;

(2) In failing to rule that:

the County Treasurer was required to search beyond county records in order to have performed a reasonable and diligent search and inquiry for Hall's address pursuant to the requirements of I.C. § 63–1126(B)(1)(b).

We reverse for the following reasons.

Hall's failure to comply with I.C. § 55–601 did not deprive him of the right to

---

**1.** 55–601 provides:

A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. *The name of the grantee and his current address must appear on such instrument.* (Emphasis added)

**2.** 63–1126B(1) provides:

(1) The county treasurer of the county wherein the property for which a tax deed may issue shall serve or cause to be served written notice of pending issue of tax deed upon the record owner or owners in the following exclusive manner:

(a) By serving or causing to be served a copy of such notice by registered or certified mail with return receipt demanded upon the record owner or owners at their last known address, such service of notice to be made no more than five (5) months nor less than two (2) months before the time set for the tax deed to issue;

(b) *In the event that such notice is served as above described and returned undelivered and after reasonable and diligent search and inquiry in attempting to locate and serve the record owner or owners, by publishing a copy of such notice in a newspaper* being most likely to give notice to the record owner or owners and having general circulation in the county wherein the property for which the delinquency entry has been made is situated. *Such publication must be made at least once a week for four (4) consecutive weeks, the last publication of which is to be no more than two (2) months* nor less than fourteen (14) days before the time set for the tax deed to issue. (Emphasis added)

equitable relief. In *Gilbert v. Nampa School District No. 131*, 104 Idaho 137, 657 P.2d 1 (1983) this Court described the doctrine of unclean hands as "conduct [that] has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." 104 Idaho at 145, 657 P.2d at 9. The record before us is devoid of facts which support a conclusion that Hall's actions were in any way inequitable, unfair, and dishonest or fraudulent and deceitful to the County. There is no evidence that Hall either prepared the deed or had any intent that his address not be placed thereon. There is no evidence that he even noticed that his address was omitted. The unclean hands doctrine does not apply to merely negligent misconduct on the part of a taxpayer. *Eresch v. Braecklein*, 133 F.2d 12, 14 (10th Cir.1943).

■ Furthermore, Hall's failure to include an address on the warranty deed did not relieve the County of its duty to comply with I.C. § 63–1126B in performing a reasonable and diligent search and inquiry to find Hall's address and notify him prior to issuance of a tax deed. I.C. § 63–1126(B)(1)(b) states that "in the event that such notice is served [by registered or certified mail] and returned undelivered *and* after reasonable and diligent search and inquiry...." (Emphasis added.) Clearly the statute contemplates that certified or registered mail notice may be undeliverable, and may be so for any number of reasons: no address on the deed, an incorrect and ineffective address, or a last known address ineffective because the parties have moved. The statute does not specify that for some reasons a reasonable and diligent inquiry will be done, and for others not—it simply indicates that whenever mail notice is undeliverable, a reasonable search and inquiry will be done before notice is published. Were the trial court's findings carried to its logical conclusion, a record owner who failed to list an address on a deed would be subject to different notice requirements than a record owner who originally furnished an address which since had changed or otherwise become ineffective. In both cases a notice would

be returned undelivered, but the trial court would have concluded that in the first case the county has no duty to further attempt to locate the record owner, while in the second case the county would have a duty of diligent search and inquiry. This is an untenable distinction.

Hall further contends a reasonable and diligent search and inquiry pursuant to I.C. § 63–1126B requires the county treasurer to search beyond the county records for a record owner's address. Hall asserts that Sun Valley Title Company had requested the warranty deed be recorded, that the title company's name was on the deed, and that the title company at all times knew Hall's address. Had the County contacted the title company, which the parties stipulated the County had done in other cases, Hall's address would have been discovered.

■ Due process requires that in any proceeding by which a person can be deprived of life, liberty or property, there must be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections [citations omitted]. The notice must be of such nature as reasonably to convey the required information...." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706 77 L.Ed.2d 180 (1983), purchasers of real property at a tax sale were seeking to quiet title. At issue were notice requirements to a mortgagee when issuance of a tax deed was impending, pursuant to an Indiana statute requiring notice by certified mail to a property owner, but only publication notice to other interested parties, such as mortgagees. In holding that publication notice to a mortgagee was inadequate, the U.S. Supreme Court observed, referring to *Mullane*, that notice by publication was not reasonably calculated to provide actual notice of a pending proceeding, and was therefore inadequate to inform those who could be notified by

more effective means such as personal service or mailed notice. In the instant case, Hall's interest in the property to be taken by tax deed was obviously greater than the interest of that of a mortgagee. Thus an even stronger case exists here that Hall is entitled to "notice reasonably calculated to apprise" him of the impending tax deed. The Court in *Mennonite* went on to explain that "unless the [owner] is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane." *Mennonite* 103 S.Ct. at 2711.

■ Clearly, notice by publication is sufficient only where an interested party is not "reasonably identifiable"; for example, as cited in *Mullane, supra,* where a person is missing or unknown, or after diligent search, no address could be found for a missing person. *Mullane,* 70 S.Ct. at 658. In the instant case the County argues that notice by publication was proper, because a reasonable and diligent search of county records did not turn up Hall's address, since Hall had not included an address on the warranty deed. The question before us, then, is whether in fact Hall was or was not "reasonably identifiable."

■ I.C. § 63–1126B requires a reasonable and diligent search and inquiry for a record owner's whereabouts *before* publication notice can be resorted to. This Court has not had occasion to interpret this requirement, but clearly a reasonable and diligent search and inquiry must be calculated to meet the minimum constitutional requirements as set forth by *Mennonite* and *Mullane.*

■ A reasonable and diligent inquiry is one a diligent person, intent upon ascertaining a fact, would ordinarily make; it is an inquiry made with good faith, to ascertain the truth, and to be as full as the circumstances of the situation will permit. *See, Liepelt v. Baird,* 17 Ill.2d 428, 161 N.E.2d 854 (1959); Black's Law Dictionary 412, 1138 (rev. 5th ed.1979). The parties stipulated that the Blaine County Treasurer did the following in searching for Hall's address:

(a) Searched the Treasurer's Office change of address file;

(b) Searched the Treasurer's Office correspondence file;

(c) Searched the Treasurer's Office mortgagee file;

(d) Searched the Blaine County motor vehicle records;

(e) Searched the local telephone book;

(f) Contacted the United States Post Office for Ketchum; and

(g) Looked up the recorded Warranty Deed in the Blaine County Recorder's Office.

The parties also stipulated that while the Treasurer does not have a policy of contacting a party at whose request a deed is recorded, or a grantor of a deed, or a beneficiary of a deed of trust, the Treasurer does sometimes contact title companies to locate a taxpayer's address. The Treasurer did not do so in the instant case, though the warranty deed had been recorded at the request of Sun Valley Title Company, whose name was on the deed. The deed of trust, also filed at Sun Valley Title Company's request, was acknowledged by Hall in Pitkin County, Colorado, his residence at all times relevant to this case.

■ The County's search was neither reasonable nor diligent. The County Treasurer admittedly had contacted title companies before, and it would not have been unduly burdensome here for her to contact Sun Valley Title Company, whose name was plainly on the deed, and whose office was located in Blaine County. Further, a diligent examination of the deed of trust would have revealed the Pitkin County, Colorado acknowledgement by Hall. Respondents point out that much of Blaine County property is owned by out-of-state residents; the County therefore could reasonably have concluded from the out-of-state acknowledgement that Hall was one of those non-resident owners, especially since notices mailed in his name to the Ketchum, Idaho post office were returned undelivered. A contact with the Pitkin County officials or the telephone company

might well have revealed an address for Hall.

Respondents submit that the Blaine County Treasurer has no obligation to search beyond county records, and should not be required to contact non-county sources such as a title company. We observe, however, that in fact the County Treasurer was not here obliged to search *beyond* county records for information leading to an address for Hall; the name of Sun Valley Title Company, and the Colorado acknowledgement were both incorporated in deeds filed in county records. The County was neither diligent nor reasonable in not following up on "obvious" leads contained in county records which would clearly have led to Hall's address.

Reversed and remanded for further proceedings and entry of judgment consistent with this opinion.

Costs to appellant. No attorney fees on appeal.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

I believe the majority opinion today has the potential of raising havoc with the title to real property acquired by tax deed in all portions of the state of Idaho. In my view it unnecessarily imposes upon counties an obligation to comply with a standard which is neither defined nor articulated. Hence, I dissent.

For untold years, I.C. § 55–601 has defined a method of conveyancing of real property. In part it states, "the name of the grantee *and his current address* must appear on such instrument." Rather clearly there was no legislative interest, purient or otherwise, in having the public records contain the address of real property owners except and because of one overriding need, *i.e.*, to facilitate the collection of real property taxes, and in the event of their default, to serve notice on the record owner as to the tax deficiency and impending forfeiture for non-payment of taxes.

The defendant here acquired the property in question by deed and for whatever reason his then "current address," contrary to the strictures of § 55–601, did not appear on the instrument of conveyance. Thereafter defendant Hall did not pay, and insofar as the record discloses made no attempt to inquire about or pay the real property taxes assessed and levied against said property. During all that period of time Hall evidently did not reside in Blaine County nor indeed within the state of Idaho, but rather in Aspen, Colorado.

The county treasurer made a tax delinquency entry in 1980 and in 1982, sending notice of pending issuance of tax deed to Hall by certified mail from the post office at Ketchum, Idaho. That notice was returned undelivered. Thereafter a notice of pending issuance of tax deed was published in the *Wood River Journal* for four consecutive weeks. Thereafter the county treasurer filed her affidavit of compliance, the county commissioners executed an order directing the issuance of a tax deed in favor of Blaine County, and the county treasurer so executed a tax deed conveying the property to Blaine County. Thereafter, the county commissioners ordered the property to be sold at public auction, and a notice thereof was also published in the local newspaper for four consecutive weeks. At that auction Giacobbi and Stanek were the successful bidders for the sum of $15,500.00, and a quit claim was issued to them which was recorded.

In spite of these elaborate and time-consuming procedures on behalf of the county officials, all as mandated by the relevant statutes, Hall complains that his constitutional rights to due process were violated and he should somehow be granted equitable relief against Giacobbi and Stanek by having the property restored to him. The record does not disclose that Hall has made any effort to tender into court any of the delinquent taxes, interest, penalties or costs.

Hall asserts, and the majority agrees, that all of the rights and interests of Giacobbi and Stanek must be set aside, what-

ever disabilities and liabilities they may have incurred must be ignored, and all county compliance with the relevant statutes be held for naught because Hall's deed was recorded at the instance of a title company which knew of Hall's whereabouts, and the county officials failed to inquire of that title company, and also because although Hall had executed a deed of trust to another title and trust company, and his signature had been acknowledged in Pitkin County, Colorado, the county treasurer had failed to make any inquiries concerning a Charles Hall in Pitkin County, Colorado. I disagree.

The documents on file in the county records consisted of the original deed to Hall, a deed of trust by Hall, and a reconveyance from a title company to Hall, one of which was executed in Colorado, one of which in the state of Washington, and one in the state of Idaho.

With all of the different entities and persons involved, it is facile in retrospect to suggest that the county treasurer *might* conclude that some of those persons or entities *might* know of the whereabouts of the delinquent taxpayer Hall. The majority dredges an answer for the instant case but fails to set any standard by which county officials may be guided in the future of their handling of thousands of tax deficiency notices issued each year within the state of Idaho. The majority herein dodges the real issue posed in the case by Hall, *i.e.*, must a county treasurer in the course of conducting a "reasonable and diligent search and inquiry" go beyond the county records to determine the address of a delinquent taxpayer. The majority rather holds that since the record documents were filed at the instance of several title companies, and an after the fact determination reveals that one of them did know Hall's address in Colorado, that the county treasurer should have inquired of that particular title company, and failure to do so was a failure to make a diligent search of the "county records." I disagree.