720 P.2d 649

**La Dell WYLIE and Debra Wylie, husband and wife, Plaintiffs-Respondents,**

**v.**

**N.H. PATTON, Defendant-Appellant.**

**No. 16204.**

Court of Appeals of Idaho.

June 5, 1986.

Petition for Review Denied Sept. 24, 1986.

62

Daniel Carl Green (argued) and Gary L. Cooper, Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-appellant.

Scott D. Stufflebeam, Blackfoot, for plaintiffs-respondents.

WALTERS, Chief Judge.

This is an appeal in a quiet title action. It involves real property acquired by a county for delinquent taxes, the interest of a beneficiary of a recorded deed of trust who did not receive notice in advance of the county's proposed acquisition of title, and the subsequent sale of the property by the county at a public auction. We conclude that the trust deed beneficiary was denied due process and that his security interest in the subject property therefore remains in effect. We hold that the district court erred in quieting title to the property in the county's grantee, as against the trust deed beneficiary.

Several Idaho statutes are implicated in this case. If real property taxes are delinquent, Idaho Code § 63–1126A authorizes a county treasurer, after a hearing before the board of county commissioners, to issue a tax deed conveying title for the property to the county. However, before title can be thus transferred, the treasurer must give notice—of the pending issuance of the tax deed—to the owner of the property, and to other interested parties who have filed with the treasurer a request for notice. I.C. § 63–1126B. The notice performs two functions: (1) it informs the recipient of the opportunity to be heard before the board of commissioners, and (2) it informs the property owner or any party in interest[1] of the opportunity to prevent public acquisition of the property by payment of the delinquent taxes plus penalties, interest, and costs incurred by the county in respect to the notice. After the hearing, if the board of commissioners finds that the treasurer has complied with the statutory notice requirements and that the tax delinquency has not been paid, the treasurer shall be directed by the board to issue a tax deed in favor of the county. I.C. § 63–1126D(2). Pursuant to I.C. § 63–1139, the tax deed conveys to the county "absolute title to the land described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 63–1134, Idaho Code,[2] any lien for taxes which may have attached subsequently to the assessment and any lien for special assessments." Upon issuance of the tax deed, the county may thereafter sell the property at public auction. I.C. § 31–808.

In the instant case, N.H. Patton—the beneficiary of a deed of trust[3]—appeals

---

1. A "party in interest" is defined as "a person or persons, partnership, corporation, business venture, or other entity which holds a valid and legally binding mortgage or security interest, properly recorded, in and for the property for which the delinquency entry has been made." I.C. § 63–1126(4).

2. I.C. § 63–1134 was repealed but substantially reenacted, and recodified, in current sections

63–1126B, 63–1126C and 63–1126D. *See* 1980 Idaho Sess. Laws, ch. 71, p. 148, § 6, p. 152.

3. Although Patton was the beneficiary of a deed of trust and not a "mortgagee" in the sense of a traditional mortgage transaction, there is no practical distinction in this case between the status of a beneficiary of a deed of trust and a mortgagee (*Long v. Williams*, 105 Idaho 585, 671 P.2d 1048 (1983)). Thus, our references to

from a summary judgment quieting title to real property in La Dell Wylie and Debra Wylie, purchasers at a public auction. The underlying facts are not disputed. In 1978 Paul and Sarah Chacon purchased certain property in Bingham County from Ralph and Patricia Gugliotta. The Chacons executed a promissory note, secured by a deed of trust, in favor of the Gugliottas. On May 1, 1980, N.H. Patton obtained a judgment against the Gugliottas. As partial satisfaction of the judgment, the Gugliottas executed a quitclaim deed to Patton of their interest in the property and assigned to him the note and deed of trust. Patton recorded these instruments in Bingham County on December 11, 1981. While these transactions were occurring and prior to Patton's recording of his interest, Bingham County was attempting to collect the 1978, 1979 and 1980 real property taxes due on the property from the Chacons, who were then the owners of record. On October 15, 1981, according to an affidavit filed by the Bingham County treasurer, notice was mailed to the Chacons that the taxes were delinquent, and if not paid by January 1, 1982, application would be made to the county commissioners for issuance of a tax deed conveying the property to Bingham County. This notice was returned as undeliverable.

The treasurer also published in a local newspaper a notice directed to the Chacons indicating the tax delinquency and the anticipated issuance of a tax deed. The publication of the notice began on December 11, 1981, the same day Patton recorded his interest, with the final publication occurring on December 31, 1981. On January 25, 1982, the county treasurer completed and recorded an affidavit stating she had complied with the statute requiring notice by mail and by publication. On January 28, 1982, a tax deed conveying the property to Bingham County was issued and recorded. Later that year, the Wylies purchased the property at public auction. The Wylies determined that their title to the property was in question due to several outstanding claims of record, including that of Patton. They therefore filed a quiet title action against Patton and others. Patton filed an answer to the Wylies' complaint, but other named defendants did not answer or appear and default judgment was entered against them. In his answer, Patton asserted that the tax deed was void because the county had not given him notice of the proposed issuance of the tax deed for nonpayment of taxes, and that the county had not complied with certain statutory requirements dealing with the published notice. On Wylies' motion, the district court granted summary judgment against Patton, and quieted title in the Wylies. The court held that Patton did not have standing to challenge the issuance of the tax deed, and that he had not been injured or prejudiced by the procedural irregularities in the notice by publication.

On this appeal, Patton challenges both the district court's determination that he did not have standing to contest the tax deed, and the court's decision that Patton was not injured or prejudiced by irregularities in the published notice. Because we conclude the "standing" issue is dispositive of this appeal, we need not address the effect of the failure of the treasurer to strictly comply with the statutory requirements for the published notice.[4]

In rendering its decision that Patton had no standing, the district court partially relied on I.C. § 63–1126B(1)(a) which requires notice of a pending issuance of a tax deed

---

a "mortgagee" throughout this opinion apply equally to Patton.

**4.** The Wylies argue that Patton was not entitled to prevail against the Wylies' motion for summary judgment because Patton failed to submit opposing affidavits and relied only on his pleadings. I.R.C.P. 56(e). However, the moving party has the burden of showing "that there is no genuine issue as to any material fact and that

[the movant] is entitled to a judgment as a matter of law." I.R.C.P. 56(e). Here, although Patton did not file any affidavits, we are unpersuaded that such omission is controlling, because, in our opinion, Patton was deprived of his property interest without due process and therefore the Wylies were not entitled to a judgment as a matter of law.

64

only to "the record owner or owners." The court also relied on § 63–1126B(4)(a) and (c) which provide that "[a]ny party in interest" shall also be given notice if he has "file[d] a written request for such notice in the office of the county treasurer of the county wherein the property ... is situated." In this case, at the time the notice of proposed issuance of a tax deed was mailed out, Patton was neither record owner nor had he requested notice since he was not yet a "party in interest" (see n. 1, supra). Thus, the district court concluded that Patton was not entitled to notice and had no standing to challenge the tax deed. As we shall explain, the district court was in error.

In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court held that a reasonably identifiable mortgagee, such as one identified in a publicly recorded mortgage, is entitled to notice of a pending tax sale "mailed to the mortgagee's last known available address, or by personal service." *Mennonite* dealt with an Indiana statute that provided for mailed notice to owners, plus posting and published notice, prior to a tax sale. However, the statute did not require notice by mail or by personal service on mortgagees of property subject to a tax sale. The Court noted that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale." Under the Indiana statutes, a purchase-money mortgage had precedence over all other claims or liens, but the interest acquired by a purchaser at a tax sale would be superior to that of the mortgagee. If the mortgagee did not redeem within the statutory period, his mortgage lien was completely nullified. As such, the mortgagee was entitled to notice "reasonably calculated to apprise him of a pending tax sale." *Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187. The Court concluded that the mortgagee had not received such notice, and that he had thus been denied due process. *See Giacobbi v. Hall*, 109 Idaho 293, 707 P.2d 404 (1985) (in any proceeding in which a person can be deprived of life, liberty or property, due process requires

notice plus opportunity to respond). The Court noted that a subsequent amendment to the Indiana statute permitted a mortgagee to file a statement requesting notice of a pending tax foreclosure. However, because that amendment was subsequent to the tax sale at issue, the Court did not address the constitutionality of the amendment. *Mennonite*, 462 U.S. at 793 n. 2, 103 S.Ct. at 2708 n. 2, 776 L.Ed.2d at 184 n. 2. Nevertheless, *Mennonite* clearly held that the burden is on the state to provide notice even though a mortgagee could take steps to safeguard his interest. *Mennonite*, 462 U.S. at 799, 103 S.Ct. at 2711, 77 L.Ed.2d at 188.

The question left unanswered by *Mennonite* concerning the amended Indiana statute—providing for notice to parties who request such notice, similar to I.C. § 63–1126B(4)(a)—has since been confronted by other courts. For example, In the *Matter of the Foreclosure of Tax Liens by the County of Erie*, 103 A.D.2d 636, 481 N.Y.S.2d 547 (N.Y.App.Div.1984) dealt with a local county ordinance which provided for notice to a mortgagee who had filed a request with the county for notification as to any impending tax foreclosures. In that case, the New York court held that the state's constitutional obligation to notify mortgagees could not be "abrogated by requiring the mortgagee to request notice. The state has an obligation to all mortgagees, not merely to those who request notice." 103 A.D.2d at 640, 481 N.Y.S.2d 547. Thus, the duty of the state could not be met by shifting the burden to the mortgagee. *Id. See also* In the *Matter of the Application of Tref Realty*, 128 Misc.2d 855, 491 N.Y.S.2d 947 (N.Y.Sup.Ct.1985).

In *First Pennsylvania Bank v. Lancaster County Tax Claims Bureau*, 504 Pa. 179, 470 A.2d 938 (1983), the Pennsylvania Supreme Court held that the state's notice provision which required notice by mail only to owners, and not to mortgagees, was unconstitutional when viewed in light of *Mennonite*. This holding resulted even though the mortgagee had "record and actual notice" of the tax lien. The mortgag-

ee had failed to pay delinquent taxes because it mistakenly thought the taxes had already been paid. However, without the notice of the impending tax sale required by *Mennonite*, the court concluded that the mortgagee's due process rights had been violated. Subsequently, the same court held in *Tracy v. County of Chester, Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985), that where mailed notice is not delivered because of an inaccurate address, the state must make a reasonable effort to determine the identity and location of the owner or owners. In *Tracy*, the court was dealing with a situation where notice of a tax sale was sent to a former partner in a partnership which owned the subject property. The remaining partners had failed to notify the taxing authorities of their ꓠew address, and thus never received notice of the tax sale until they tried to sell the property. The court acknowledged that even though there was no information in the tax system which would have indicated the new address of the partnership, the county had an affirmative duty to look into the records of the Secretary of the Commonwealth to determine the names and addresses of the other partners and provide notice to them.

The Missouri Supreme Court has addressed the application of *Mennonite* to situations involving beneficiaries of deeds of trust. *Lohr v. Cobur Corporation*, 654 S.W.2d 883 (Mo.1983). The *Lohr* court concluded that the interest of a deed of trust beneficiary is a substantive property right protected by due process requirements. The county had published notices of the sale that named only the owners but did not mention the mortgagee or its agent. Subsequently the county sold the property without having determined if there were any deeds of trust on the property. The mortgagees never received any notice from anyone about the impending tax sale. Applying *Mennonite*, the court held that where the deed of trust naming the beneficiary is publicly recorded, notice by publica-

tion is insufficient and must be supplemented by mailed notice to the last known address of the beneficiary or by personal service. *See also Bankers Union Life Insurance Co. v. Floy Hanks and Mistwood, Inc.*, 654 S.W.2d 888 (Mo.1983) (case decided same day as *Lohr* and remanded for consideration in light of *Lohr* ).

Finding that the procedure in Oklahoma "tracks" the Indiana procedure addressed in *Mennonite*, the Oklahoma Court of Appeals concluded that constructive notice to a mortgagee of record (by virtue of publication of a notice of sale for delinquent taxes) was not sufficient to deprive the mortgagee of his security interest in the property through a county tax sale. *United States v. Malinka*, 685 P.2d 405 (Okla. Ct.App.1984). The court declined to clothe the county with any protection flowing from the "well-established" rule that a county treasurer could furnish tax information, upon request, to interested parties, such as a mortgagee. The court held that

> [T]he mortgagee of real estate subject to forfeiture for the owner's failure to pay real estate ad valorem taxes is entitled to actual notice before its constitutionally protected interests in the real estate can be terminated. *Mennonite* clearly places the onus on the State to provide actual notice to the mortgagee where the mortgagee's identity can be reasonably discovered, *notwithstanding that the mortgagee might take certain steps to protect its own interest*. [Footnote omitted; emphasis supplied.]

685 P.2d at 408.

 We agree with these analyses concerning the scope of *Mennonite*. We have previously noted that in Idaho a deed of trust is for practical purposes only a mortgage with a power of sale. *Long v. Williams*, 105 Idaho at 587–88, 671 P.2d at 1050–51. Thus, we hold that the constitutional requirements of notice due a mortgagee are also owed to the beneficiary of a deed of trust.[5] To the extent that I.C.

5. The record in this case does not indicate whether any actual notice was given to the *trust-*

*ee* of the deed of trust in question, as distinguished from notice to the *beneficiary.* Neither

§ 63–1126B does not provide for notice to a mortgagee of record, who has not previously requested notice, the statute is constitutionally infirm for allowing deprivation of a property interest without due process. Nor does the published notice in this case (regardless of alleged irregularities in the notice) remedy the constitutional deficiency. Our Supreme Court has held that notice by publication is sufficient only where an interested party is not "reasonably identifiable"; for example, where a person is missing or unknown, or after a reasonable and diligent search, no address could be found for a missing person. *Giacobbi v. Hall,* 109 Idaho 293, 297, 707 P.2d 404, 408 (1985), *relying* on *Mennonite* and *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950). The import of the decisions in *Mennonite* and *Giacobbi* is that where the interested party is reasonably identifiable, such as through a publicly recorded instrument, notice solely by publication is not sufficient to meet due process requirements.

■ We recognize that the conclusions reached in *Mennonite* dealt with a mortgagee of record, and that the Court's holding requiring mailed notice or personal service apply only to those mortgagees who are "reasonably identifiable." *Mennonite,* 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187. The Court pointed out that a "governmental body is [not] required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Mennonite,* 462 U.S. at 799 n. 4, 103 S.Ct. at 2711, n. 4, 77 L.Ed.2d at 187 n. 4. In the present case Patton was not "in the public record" when the county treasurer determined to whom the notice of pending issuance of the tax deed should be mailed. Therefore, regardless of the statutory requirements and the holding in *Mennonite,* Patton was not entitled to mailed notice at the time the treasurer mailed no-

tice to the Chacons about the issuance of a tax deed. However, before the tax deed was issued, Patton became a mortgagee of record. Thus, we are confronted with the question: "did the county treasurer have a duty to check the public records after the notice of publication and prior to the issuance of the tax deed?" The *Mennonite* Court only touched upon this issue. The Court indicated that it did not have to reach the question of whether there was a duty to notify the mortgagee of his right to redeem the property prior to the execution and delivery of the deed to the tax sale purchaser. 462 U.S. at 800 n. 6, 103 S.Ct. at 2712 n. 6, 77 L.Ed.2d at 188 n. 6. Here, in order to avoid running afoul of the due process requirements, we believe the county treasurer should have reexamined the public records prior to issuing the tax deed to Bingham County even though the records had been previously checked. Such an examination would have revealed Patton's interest.

The time frame occurring in this case was sufficient to allow for such notice. Idaho Code § 63–1126B(1)(b) provides that if notice by mail is undeliverable, the county must publish notice in a newspaper of general circulation in the county where the property is located. The publication must be made at least once each week for four consecutive weeks, and the last publication must be no more than two months nor less than fourteen days before the time set for the tax deed to issue. Then, under I.C. § 63–1126C(1), at least five days before the issuance of the tax deed, the county treasurer must make an affidavit of compliance indicating that the statutory notice requirements were followed and stating the facts which show that compliance. Under that time frame, where the last published notice was at least fourteen days before the proposed issuance of the tax deed and the treasurer was required to file an affidavit of notice compliance five days prior to issuance of the deed, there were, minimally,

party has argued that notice was given to the trustee. We therefore assume the trustee was not given notice and we voice no opinion on

whether notice to a trustee would suffice in place of notice to the beneficiary.

nine intervening days during which the public records could have been examined to discover Patton's interest in the property. Considering the constitutional obligation of the state recognized in *Mennonite*, we conclude that such a duty was required. Such a requirement would not seriously impede the county's ability to obtain title to the property for taxes not paid, yet would protect the interest of parties, such as Patton, who did not receive notice prior to the tax deed issuance. Thus, the procedure culminating in the issuing of the tax deed, as applied to Patton, was unconstitutional.

In summary, before the county can obtain title by a tax deed, free of mortgages of record, the treasurer must provide notice of the proposed issuance of the tax deed both to mortgagees of record who have requested such a notice and to mortgagees of record who have not requested such a notice. Furthermore, the notice given must allow for sufficient time to reasonably afford the mortgagee an opportunity to respond to the proposed issuance of the tax deed. Otherwise, the issuance of a tax deed will not convey title to the property free from the recorded security interest. I.C. § 63–1139.

The judgment of the district court, insofar as quieting title in the Wylies against Patton's trust deed, is reversed. Costs to appellant, Patton. No attorney fees on appeal.

SWANSTROM, J., and McFADDEN, J. Pro. Tem., concur.