777 P.2d 1218

### FEDERAL LAND BANK OF SPOKANE,

Plaintiff–Counterdefendant–Respondent,

v.

Robert PARSONS, Jr.,
Defendant–Counterclaimant–Appellant,

and

Bethea Parsons and Robert Parsons, Sr., Defendants.

No. 17127.

Court of Appeals of Idaho.

July 6, 1989.

Petition for Review Denied Aug. 25, 1989.

Robert Parsons, Jr., appellant pro se.

Ron Kerl (Greene, Service, Gasser & Kerl), Pocatello, for plaintiff-counterdefendant-respondent.

BURNETT, Judge.

This case arises from the foreclosure of a mortgage on farmland. After a bench trial, the district court found that Bethea and Robert Parsons had defaulted on a loan from Federal Land Bank. The default arose from failure to pay property taxes as required in the mortgage. The court directed foreclosure of the mortgage. On appeal, the debtors' son, Robert Parsons, Jr., argues that the district court erred (1) in exercising jurisdiction; (2) in denying a request for a jury trial; (3) in dismissing a counterclaim alleging fraud by the Federal Land Bank; and (4) in conducting the trial when the regular court reporter was ill. He further asserts that his parents were denied a right to a hearing before the board of county commissioners on the non-payment of taxes which resulted in the default. The bank challenges the standing of Robert Parsons, Jr., to bring and prosecute this appeal. Both parties seek attorney fees. We affirm the district court's judgment and award attorney fees to the bank.

Our analysis begins with a more detailed statement of the facts. In 1979, Robert and Bethea Parsons borrowed $32,000, secured by a mortgage on their farmland, from the Federal Land Bank of Spokane. The loan was arranged by the Farm Credit Association in Blackfoot, Idaho. The Farm Credit Association is a federal land bank association, supervised by the Federal Land Bank of Spokane as part of the farm credit system set out in 12 U.S.C. § 2001 et seq.

Until 1984, the debtors regularly paid the bank all amounts due on the loan. However, beginning in 1980, they attempted to pay the taxes on the property with their own "public office money certificates" rather than with a check or cash.[1] The county deemed the taxes to be unpaid. In 1984, with no taxes paid on the property since 1979, the Bingham County Treasurer sent the debtors and the bank a notice of intent to collect the back taxes by selling the property on a tax deed. To avoid the issuance of a tax deed, the bank paid the 1980 taxes and added that amount to the next loan statement. The debtors refused to pay this amount to the bank, and later refused to pay with cash or check any sums due on the loan.

This dispute continued through 1984–85. In September, 1985, the bank filed a complaint to foreclose the mortgage because of the debtors' failure to pay taxes or to make further loan payments. The debtors counterclaimed, alleging fraud by the bank, and requesting a jury trial. The district court denied the jury trial request. After a bench trial was held on the foreclosure complaint and the debtors' counterclaim, judgment was entered for the bank. This appeal followed.

I

We turn first to issues claimed by each side to be jurisdictional. The bank contends that Robert Parsons, Jr., is not one of the obligors under the loan agreement and has no standing to file or pursue this appeal. Consequently, the bank suggests, the notice of appeal is defective and confers no appellate jurisdiction. Parsons also challenges the bank's standing to sue in state court. We will address these issues in turn.

Parsons signed and filed the notice of appeal. His parents later filed a notice that they joined in the appeal, but they did so after the 42–day appeal filing deadline had passed. Idaho Appellate Rule 4 allows a "party aggrieved" by a judgment to file an appeal. Our Supreme Court has defined a "party aggrieved" as any party injuriously affected by the judgment. *Roosma v. Moots*, 62 Idaho 450, 112 P.2d 1000 (1941). In this case, Parsons claims to be injured

---

1. A public office money certificate is a contrived promissory note with no real value. It is used by those who believe that only gold and silver coins are legal currency. It is tendered as a promise to pay when a "proper" official determination is made as to what type of currency has been authorized as a substitute for gold and silver.

because he has an expectancy of owning the family property. Such an expectancy is not enough. However, we note that the bank itself made Parsons a party to this action. It named him as a defendant in its foreclosure complaint in order to extinguish any possible interest he might have. If Parsons had an interest that could be extinguished by the judgment, then he also has an interest to assert on appeal. *E.g., State ex rel. Moore v. Howell*, 111 Idaho 963, 964–65, 729 P.2d 438, 439–40 (Ct.App. 1986). Accordingly, we will assume for the purpose of today's discussion that Parsons had standing to file this appeal.

We now examine Parsons' contention that the district court improperly allowed the bank to appear in state court. Parsons argues first that the federal courts have exclusive jurisdiction over actions brought by a federal land bank. Second, he maintains that the bank did not comply with provisions in the Idaho Code regulating corporate jurisdiction in state courts.

■ We are not persuaded by Parsons' argument that the Bank can sue only in federal court. State courts are courts of general jurisdiction; the jurisdiction of federal courts is limited. C. WRIGHT, LAW OF FEDERAL COURTS, 4th ed. § 7 (1983). Only in certain instances has Congress provided that the jurisdiction of the federal courts shall be exclusive of state court jurisdiction. *Id.* at § 10. Federal jurisdiction is not exclusive unless Congress chooses to make it so. *Id.* Here, the Farm Credit Act does not contain a provision giving federal courts exclusive jurisdiction over actions brought by federal land banks. Thus, the bank in this case was not barred from suing in state court.

■ Parsons further asserts that the district court lacked jurisdiction because the bank failed to comply with I.C. § 30–1–124. That provision requires a "certificate of authority" before "any foreign corporation transacting business in this state ... shall be permitted to maintain any action...." We do not agree that the bank needs a certificate of authority.

First, the bank is not a "foreign corporation." Federal land banks are "federally chartered instrumentalities of the United States." 12 U.S.C. § 2011. The Idaho Supreme Court has held that an "instrumentality of the United States ... is not a foreign corporation." *Home Owner's Loan Corp. v. Stookey*, 59 Idaho 267, 278, 81 P.2d 1096, 1100 (1938) (applying previous Idaho law which also required filing as a foreign corporation). *See also Twin Falls National Bank v. Reed*, 44 Idaho 573, 576, 258 P. 526, 527 (1927) (national bank doing business in Idaho under authority of Congress is not the type of business to which state registration laws were intended to apply).

■ Additionally, I.C. § 30–1–124 is subject to exceptions enumerated in I.C. § 30–1–106. The latter section specifically exempts "creating ... indebtedness or mortgages" and "securing or collecting debts" from the scope of activities which constitute transacting business. I.C. § 30–1–106(g) and (h). These statutory phrases describe the business of the Federal Land Bank. We therefore agree with the district court that it had jurisdiction to rule on the bank's complaint.

## II

We now turn to Parsons' other arguments on appeal. As previously noted, two of the grounds upon which Parsons challenges the judgment are that the debtors were improperly denied a jury trial and that their counterclaim for fraud was denied incorrectly. We will discuss these issues together because it could not be said that the debtors were deprived of a jury trial unless they presented a claim in fraud sufficient to establish a genuine jury question.

■ We note first that Parsons raises many of the same issues which our Supreme Court recently address¢ ' ˙n *Dₐ ˸* *Steed and Associates v. Young*, 115 Idaho 247, 250, 766 P.2d 717, 720 (1988), another

case involving a mortgagor's right to a jury trial. In *Steed,* the Court held that a mortgagor may be entitled to a jury trial only on a counterclaim asserting matters historically tried by juries. The Supreme Court's decision in *Steed* did not change the long standing rule in Idaho that the right to a jury trial does not embrace equitable actions. *David Steed and Associates v. Young,* 115 Idaho at 254, 766 P.2d at 724. (Bakes, J. dissenting.) "The rule is too well settled to require the citation of authorities, that a mortgage foreclosure is an equitable proceeding, in which neither party is entitled to a jury trial." *Id.* at 255, 766 P.2d at 725 (quoting *Rees v. Gorham,* 30 Idaho 207, 212, 164 P. 88, 89 (1917)). Thus, the debtors in this case had no right to a jury trial on the mortgage foreclosure.

Parsons asserts that the debtors were entitled to a jury trial on their counterclaim alleging fraud. The bench trial in this case was held in July, 1987; the Supreme Court decided *Steed* in September, 1988. It is not self-evident that *Steed* should be applied retroactively. However, we need not reach that question because we disagree with Parsons' contention that the debtors have stated a claim in fraud sufficient to go to a jury.

A trial court may withdraw an issue from the jury if no substantial evidence supports the claim. Our task on review is to determine the nature of the evidence required to constitute a jury question and to ascertain whether substantial evidence was presented. In reviewing a record for this purpose, the evidence must be viewed in the light most favorable to the claimant. *E.g., Wing v. Hulet,* 106 Idaho 912, 918, 684 P.2d 314, 320 (Ct.App.1984).

The plaintiff in a fraud case bears the burden of proving the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Witt v. Jones,* 111 Idaho 165, 168, 722 P.2d 474, 477 (1986); *Umphrey v. Sprinkel,* 106 Idaho 700, 709, 682 P.2d 1247, 1256 (1983).

Here, the trial court found that the debtors did not establish a claim in fraud on any of these elements. We agree. The debtors' general and conclusory allegations of fraud, unsupported by the evidence, were not sufficient to take the case to a jury. The debtors alleged, *inter alia,* that the bank did not disburse the loan proceeds, that the tax obligation paid by the bank did not legally exist, and that the bank's foreclosure action was a fraud. The bank provided proof of the loan and the mortgage, proof of the tax obligation, and proof of the debtors' failure to make required loan payments.

Parsons nonetheless urges that the bank's foreclosure action was fraudulent. He asserts that (1) foreclosure cannot be used to seek repayment of a money debt; (2) the bank's mortgage was not a valid lien, and thus cannot have priority over other interests; (3) the bank's actions were ultra vires; and (4) the bank is not entitled to foreclosure of the mortgage because it refused the debtors' tender. We will address each contention in turn.

First, the law in Idaho authorizes a single form of action to collect a debt secured by a mortgage. I.C. § 6–101. To collect on the debt, the mortgage must be foreclosed. The creditor may not simply sue on the debt and collect by execution on the judgment. *Quintana v. Anthony,* 109 Idaho 977, 979–80, 712 P.2d 678, 680–81 (Ct.App.1985). The bank correctly sought repayment of its $32,000 loan by the mortgage foreclosure.

Second, Idaho law provides that "a mortgage is a lien upon everything that would pass by a grant or conveyance of the property." I.C. § 45–906. The bank produced evidence that its mortgage was properly recorded. Additionally, when the bank

filed the complaint in foreclosure, it also filed a Lis Pendens under I.C. § 6–504, which gave notice to any *subsequent* purchaser that the foreclosure action was pending. *See Suitts v. First Security Bank of Idaho, N.A.,* 100 Idaho 555, 559, 602 P.2d 53, 57 (1979). The record does not indicate that any party with a properly recorded interest prior to the mortgage has contested this foreclosure.

■ Third, the phrase used by Parsons, "ultra vires," describes an action which is beyond the purpose or power of a corporation. *McDermott v. Bear Film Co.,* 219 Cal.App.2d 607, 610, 33 Cal.Rptr. 486, 489 (1963). Here, the Bank's actions were not ultra vires but were fully within the scope of its general corporate powers, which include the power to acquire and dispose of real estate, to make contracts, and to sue and be sued. 12 U.S.C. § 2033.

■ Finally, a valid tender requires that a debtor produce money and place it in the control of the creditor. *International Industries, Inc. v. United Mortgage Co.,* 96 Nev. 150, 606 P.2d 163, 166 (1980). Only if a creditor unjustifiably refuses a sufficient, bona fide tender is his right to sue on the debt adversely affected. *E.g., Pollard Oil Co. v. Christensen,* 103 Idaho 110, 116, 645 P.2d 344, 350 (1982). Public office money certificates are not, and never have been, recognized as legal tender for debts. *Parsons v. State,* 113 Idaho 421, 428, 745 P.2d 300, 307 (Ct.App.1987). Here the record reveals that the debtors tendered only such certificates, which the bank was not obliged to accept.

We therefore conclude that none of the allegations of fraud expressly or impliedly set forth in the counterclaim was sufficient—even when viewed in the context of evidence presented at the bench trial—to establish a viable jury question.[2] The counterclaim would have been subject to disposition by a directed verdict or judgment n.o.v. even if the *Steed* decision had

been foreseen and applied here. Therefore, we find no erroneous deprivation of a jury trial.

### III

■ Parsons next asserts that the trial was illegal because the regular court reporter was ill and the proceedings were tape recorded. However, Parsons failed to raise this issue in the district court and he did not object when the judge announced that the proceedings would be tape recorded and later transcribed. A litigant may not remain silent as to claimed error during a trial and later urge his objection for the first time on appeal. *Hoppe v. McDonald,* 103 Idaho 33, 35, 644 P.2d 355, 357 (1982). In any event, we note that where a tape recording is made of a trial under the supervision of the district judge, and the tapes are properly preserved by the Clerk of the Court under Rule 25 of the Idaho Court Administrative Rules and thus available for appeal, as happened here, there is no illegality.

Parsons' final argument is that when the Bank paid the real estate taxes on the mortgaged property, he and his parents were deprived of a potential hearing before the board of county commissioners to defend the use of public office money certificates. This, according to Parsons, was a denial of due process. We do not agree.

If real property taxes are delinquent, Idaho Code § 63–1126 provides the procedure for issuance of a tax deed by a county. A properly issued tax deed conveys title to the county. I.C. § 63–1139. However, before property can be thus transferred, the county treasurer must give notice of the pending issuance of a tax deed to all parties with a recorded interest. *See Wylie v. Patton,* 111 Idaho 61, 720 P.2d 649 (Ct.App.1986). As we noted in *Wylie,* this notice informs the recipient of his opportunity to be heard before the board of county commissioners, and informs any party in interest of the opportunity to prevent the public acquisition of the property by paying the delinquencies. *Wylie,* 111 Idaho at 62, 720 P.2d at 650.

2. Because we find no basis for Parsons' claim of fraud, we do not need to reach the issue raised

by the Bank, that it is immune from suit for fraud because of sovereign immunity.

Here, when the bank paid the delinquent taxes on the debtors' property, it acted within its contract rights to prevent the acquisition of the property by the county. The bank had no duty to preserve the debtors' alleged right to a hearing before the board of county commissioners. In any event, there was no ultimate denial of a hearing because the bank's action simply shifted the controversy from the county commissioners' office to the courts.

The judgment of the district court, directing foreclosure of the mortgage, is affirmed. Attorney fees and costs on appeal are awarded to the bank as provided in the mortgage.

SWANSTROM, J., and HART, J. pro tem, concur.