*694 OPINION OF THE COURT
Kaye, J.
 A former mortgagee in the first appeal and former property owners in the second, challenge the constitutionality of New York City’s "notice-by-request” procedure for in rem tax foreclosure actions, asking that the tax deeds on the subject properties be declared void and their interests restored. We resolve both appeals in the City’s favor, the first on the ground that petitioner mortgagee had actual notice in time to bring suit, and the second on the ground that the City’s statutory scheme for giving notice to property owners met the requirements of due process. The factual record in the first case makes it unnecessary for us to consider whether the City’s notice provisions would also meet due process requirements as to mortgagees.
The "In Rem” Procedure in General
Title 11 of the New York City Administrative Code makes available a summary tax foreclosure procedure whenever an outstanding tax lien has been unpaid for more than one year (Administrative Code § 11-404 [a]), and it sets forth the mechanics for notifying interested parties that this procedure has been initiated.
In rem actions are commenced by the filing of duplicate lists of delinquent taxes in the office of the clerk of the county in which the parcels are located (Administrative Code § 11-405 [d]). Publication of a notice of foreclosure must be made at least once a week for six successive weeks in the City Record and in two newspapers published and circulated within the relevant county (Administrative Code § 11-406 [a]). In addition to publication, the Commissioner of Finance must mail a copy of the notice to all owners, mortgagees, and lienors who have filed "owner’s registration” or "in rem” cards (Administrative Code § 11-406 [c]).
*695 Owner registration cards must include the owner’s name and mailing address, and are designed to enable the Commissioner to mail bills for taxes and other charges, as well as foreclosure notices, to the proper party in interest (Administrative Code § 11-416). In rem cards purport to provide mortgagees, lienors and others having an interest in the property —but not authorized to receive tax bills — with a means of receiving notice of any foreclosure action initiated by the Commissioner (Administrative Code § 11-417).
If no owner registration or in rem card is on file, the Commissioner must mail the notice to the name and address, if any, listed on the latest annual record of assessed valuations (Administrative Code § 11-406 [c]).
For a period of 10 weeks from the date of first publication of the notice of foreclosure, any person claiming an interest in a parcel listed in that notice has the opportunity to redeem it by paying all delinquent taxes, interest and penalties (Administrative Code § 11-407 [a]). Upon expiration of this 10-week period (the last date for redemption), any interested party may still redeem a parcel by payment of a 5% penalty in addition to the other charges. This window for redemption is open until the Commissioner is notified by Corporation Counsel that the preparation of the judgment of foreclosure has been commenced (Administrative Code § 11-407 [c]).
An interested party may serve a verified answer within 20 days of the last date for redemption, thereby severing the action as to any parcel in which the defendant has pleaded an interest (Administrative Code § 11-409 [a]). If no answer is interposed — and none was in respect to any of the parcels involved in these appeals — the court, after satisfying itself that the City has complied with all procedural requirements, is directed to enter final judgment awarding the City possession of the parcels listed (Administrative Code § 11-412). The judgment must also contain a direction to the Commissioner of Finance to prepare, execute and record a deed conveying title to all affected parcels to the City.
For a period of two years from the date the tax deed is recorded, an owner or mortgagee may apply for release of the property (Administrative Code § 11-424 [a]). If this application is made within four months of the filing date — and includes all requisite taxes, charges and penalties — the City must grant the release. If an application is made after this four-month period, but prior to the expiration of the two-year limitation, *696 release of the property is within the discretion of the Board of Estimate.
Opinion per Kaye, J.
Finally, title 11 contains what is in effect a Statute of Limitations, providing that, after a period of two years from filing, a tax foreclosure deed raises a conclusive presumption that the in rem foreclosure proceeding was conducted in accordance with all provisions of law relating thereto (Administrative Code § 11-412 [c]). No action to set aside the tax deed may be commenced after the expiration of this two-year period.
Challenge by ISCA Enterprises
In May 1981, the City commenced an action to foreclose on all real property located in Kings County with tax delinquencies of more than one year. Approximately .17,000 parcels were involved.
ISCA Enterprises, at that time, was the mortgagee on two of those parcels, its interests duly recorded, but it did not receive any actual notice of the foreclosure action. It is uncontested that notice was published according to the provisions of title 11 and that the proper filing was made in the Kings County Clerk’s office.
On July 28, 1983, the City acquired title to the two ISCA parcels under a deed executed by the Commissioner of Finance pursuant to a judgment of foreclosure. Tax deeds were recorded at this time. In addition, prior to July 1983, ISCA had become the owner of a third parcel that was also among those subject to the judgment of foreclosure.
ISCA became aware of the tax foreclosure, and the recording of the tax deeds, in December 1983, with more than a year and a half left to run on the two-year Statute of Limitations. Instead of commencing an action to set aside the tax deeds, however, ISCA elected to pursue an application for release with the Board of Estimate, making the required filing in October 1984. Release was denied in October 1987, after which ISCA brought the present action — a full four years after learning of the foreclosure. The petition alleged that ISCA had been denied due process in that it was not given notice reasonably calculated to apprise it of the pendency of the foreclosure action.
Supreme Court granted the City’s motion to dismiss, finding *697 that the cause of action accrued on December 1, 1983 at the latest. On that basis, the court concluded that the instant action, commenced more than four years later, was time barred. The ruling was affirmed by the Appellate Division.
We now affirm the Appellate Division order. ISCA’s actual notice of the foreclosure action well within the two-year limitation period precludes that party from challenging the conclusive presumption raised by the properly recorded foreclosure deed (see, Administrative Code § 11-412 [c]). Having itself delayed commencement of its action for nearly four years from notice, ISCA cannot be heard to complain of a constitutional infirmity in the original notice procedure (see, Town of Somers v Covey, 2 NY2d 250, 257-258, cert denied 354 US 916).
Nor is there merit in ISCA’s two additional arguments. First, ISCA asserts that the suit could not have been brought prior to the exhaustion of administrative remedies. A claim that a statute is unconstitutional may be raised in a judicial proceeding without first exhausting the administrative review process (see, Young Men’s Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375). Matter of Tax Foreclosure No. 35 (71 NY2d 863) is not to the contrary. There, the property had been released to its former owner on payment of taxes, interest and penalties, which the owner elected not to make; in those circumstances, the owner could claim no deprivation of due process.
Second, ISCA asserts that the Board of Estimate procedure tolled the Statute of Limitations on the constitutional claim. There is no support for this position in the Administrative Code, which sets up the release procedure as a means of paying off all taxes and charges on the forfeited property. ISCA was free to bring its constitutional challenge regardless of its decision to pursue a release, and pursuit of that course should therefore have no tolling effect (see, Board of Regents v Tomanio, 446 US 478, 486-487; see also, Craig v Township of Ewing, 678 F Supp 1106,1108 [D NJ]).
For these reasons we affirm the order of the Appellate Division upholding the dismissal of ISCA’s petition without reaching the constitutional issues tendered for our review. While we understand that the adequacy of the City’s "notice-by-request” provision has been a vexing issue particularly with respect to mortgagees, the posture of the present case does not permit us to reach that issue.
*698 Challenge by the Campbell Plaintiffs
Plaintiffs, owners of Manhattan real estate, brought this consolidated action to compel the determination of claims to that property pursuant to article 15 of the Real Property Actions and Proceedings Law. The action originally involved 23 parcels as to which ownership had been transferred to the City pursuant to tax foreclosure deeds. This appeal concerns only 13 of those parcels.
At the time the in rem foreclosure actions were commenced by the City, each parcel had an outstanding tax delinquency of at least 18 months; the City’s tax deeds were recorded in the period from May 1977 to September 1980, and the original article 15 actions were commenced by plaintiffs in September 1986. As to the 13 parcels before us, Supreme Court granted plaintiffs’ cross motion for summary judgment, declaring the judgment and deeds for those parcels void. The Appellate Division’s affirmance of that portion of Supreme Court’s decision forms the basis of this appeal. We now reverse and grant summary judgment to the City.
Preliminarily, the City again urges dismissal of the action because it was not brought within the two-year Statute of Limitations. The City’s argument must be rejected.
Unlike the ISCA appeal, there is no evidence in this case that plaintiffs had actual notice in time to bring their action. Contrary to the City’s assertions, a challenge to the constitutionality of a notice provision, where the party had no timely notice, is not barred by the Statute of Limitations; the City’s cited cases do not hold otherwise (see, e.g., Weaver Sons Co. v Burgess, 7 NY2d 172; Meigs v Roberts, 162 NY 371). That principle, an eminently fair one at least implicit in this Court’s prior decisions, is followed in the majority of jurisdictions (see, Benoit v Panthaky, 780 F2d 336, 338-339 [3d Cir] [and cases cited therein]; see also, Schroeder v City of New York, 371 US 208, 210).
As an alternative Statute of Limitations argument, the City claims that plaintiffs, chargeable with the knowledge that taxes must be paid on real property, should be deemed to have had actual knowledge of the foreclosure action because such action is the logical sequel to tax delinquency. That argument also must fail.
It is no longer true that an owner is chargeable with knowledge of all events affecting its property, a view exempli *699 fied by the rejected "caretaker” theory of property ownership (see generally, Matter of McCann v Scaduto, 71 NY2d 164, 174-176). Instead, the burden is on the party charged with giving notice, regardless of whatever "fault” may be assigned to the delinquent taxpayer. As the Supreme Court made clear: "knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.” (Mennonite Bd. v Adams, 462 US 791, 800.) The status of owner may still have some relevancy in determining whether the notice is adequate, but it is immaterial to the Statute of Limitations analysis (see, Congregation Yetev Lev D’Satmar v County of Sullivan, 59 NY2d 418, 423; see also, Sheehan v County of Suffolk, 67 NY2d 52, 58-59, cert denied sub nom. MacKechnie v County of Sullivan, 478 US 1006).
Thus, in this case we reject the City’s Statute of Limitations arguments and reach the issue whether the notice provision of Administrative Code § 11-406 (c) comports with the requirements of due process. Because of the scheme of the code relating to property owners, we conclude that, as applied to the plaintiffs, it does.
In Mullane v Central Hanover Trust Co. (339 US 306, 314), the Supreme Court, balancing the interest of the State against the individual interest sought to be protected by the Due Process Clause, formulated the test we apply for determining the adequacy of notice: notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.”
In the circumstances presented, notice by publication alone would unquestionably be insufficient. In Mennonite Bd. v Adams (462 US 791, 800, supra), where the Mullane balancing test was applied to real property tax proceedings, it was determined that notice by mail is a constitutional precondition to a proceeding that will adversely affect the property interest of any party whose name and address are reasonably ascertainable. Here, where the owner’s name could be obtained through City records, it seems clear that constructive notice alone would be constitutionally deficient (see, Matter of McCann v Scaduto, 71 NY2d, at 176, supra).
But the code provides for more than notice by publication— it permits a property owner to file an "owner’s registration card.” The constitutionality of such a procedure — what plaintiffs characterize as the "notice-by-request” procedure — presents us with an issue explicitly left open by the United States *700 Supreme Court in Mennonite (462 US, at 793, n 2 [the Indiana statute in issue was subsequently amended to provide for notice to interested parties who filed an annual registration card and paid an annual registration fee, and the Supreme Court declined to pass on the constitutionality of the amendment]). That issue has generated considerable litigation — with mixed results — both within this State[1] and throughout the country.[2]
Of key importance in those cases where the notice-by-request procedure was held invalid was the language in Mennonite (462 US 791, 799, supra) that "a party’s ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.” (See, e.g., Wylie v Patton, 111 Idaho 61, 65, 720 P2d 649, 653; Seattle-First Natl. Bank v Umatilla County, 77 Ore App 283, 290, 713 P2d 33, 37.) As applied in the notice-by-request context, that language has been held to prohibit the State from shifting the burden of providing adequate notice to the interested party (see, Small Engine Shop v Cascio, 878 F2d 883, 884 [5th Cir]).
Unlike the notice-by-request statutes involved in the cited cases, however, the City Administrative Code provides for *701 additional procedures by which property owners actually receive notice — by mail to the name and address appearing on the latest annual record of assessed valuations, the key record for the tax billing purposes (see, Administrative Code § 11-210 et seq.; see also, RPTL 502 [2]; Cooper v Makela, 629 F Supp 658, 661 [WD NY]).[3] Plaintiffs do not contest the City’s assertion that notice was mailed to the names and addresses listed on the assessment roll entries pertaining to their properties; rather they allege that such information was not properly updated. There is no support for that contention in the record. More importantly, plaintiffs’ challenge to the constitutionality of the statute itself must fail in light of this additional statutory mechanism for providing that property owners receive actual notice of a foreclosure.
In determining that these provisions are constitutionally adequate, we note that searching property records (at least in the form maintained at the time these actions were commenced), as plaintiffs request, would unquestionably impose a very substantial burden on the City; some 17,000 properties were involved in Kings County alone. Of course, the imposition of a burden on a municipality does not excuse it from taking reasonable steps to provide actual notice to owners whose interests have been duly recorded. But it is among the circumstances that may be taken into account, under Mullane and Mennonite, in determining whether the steps taken to give notice are reasonable.
Finally, it is also relevant that it is the delinquent owners themselves who are involved here. Some responsibility for maintaining current records is reasonably assigned to the owners, who should be alerted to the need to update their records by a failure to receive timely billing notices (see, Administrative Code § 11-416). Although that does not relieve the City of its burden to provide adequate notice, again it is a circumstance that may be considered in balancing the interests of the parties and determining whether notice provisions are reasonable.
Under all of the circumstances presented in this case— where the burden of individually searching the title records would be onerous for the City, and where the City publishes notices, sends notices to those who have filed request cards and if no cards are filed, mails notices to the names and addresses on the assessment record — we conclude that the *702 City Administrative Code notice provisions satisfy the minimum requirements of due process. We therefore reverse the Appellate Division order and award summary judgment to the City as against plaintiff property owners.
Accordingly, as to ISCA Enterprises the order of the Appellate Division should be affirmed, with costs. As to the Campbell plaintiffs, the order of the Appellate Division should be reversed, with costs, the City’s motion for summary judgment granted and the City declared to be the owner of the 13 subject parcels.
Chief Judge Wachtler and Judges Simons, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
In Matter of ISCA Enters. v City of New York: Order affirmed, with costs.
In Campbell v City of New York: Order reversed, with costs, defendant’s motion for summary judgment granted, and defendant declared to be the owner of the 13 subject parcels.

. Compare, Matter of Foreclosure of Tax Liens by County of Erie, 103 AD2d 636, 639-640 (4th Dept) (the constitutional obligation to provide adequate notice to mortgagees cannot be abrogated by requiring those parties to request notice) and Alliance Prop. Mgt. & Dev. v Andrews Ave. Equities, 133 AD2d 30 (1st Dept), affd on other grounds 70 NY2d 831 (the procedure is constitutionally inadequate where the City had actual notice of mortgagee’s interest, identity and whereabouts through status as named party in prior foreclosure action brought by that mortgagee), with Matter of Tax Foreclosure No. 35, 127 AD2d 220, 226 (2d Dept), affd without reaching constitutional issue 71 NY2d 863 (procedure is a "simple, efficient, and eminently fair” method of providing notice — but owner had actual notice within the two-year limitations period).

. See, e.g., Small Engine Shop v Cascio, 878 F2d 883 (5th Cir) (County Treasurer was constitutionally required to provide notice to mortgagees of record, whether or not they requested it); Seattle-First Natl. Bank v Umatilla County, 77 Ore App 283, 713 P2d 33, review denied 300 Ore 704, 716 P2d 758 (State’s constitutional duty to provide notice cannot be abrogated by requiring mortgagee to request notice); Wylie v Patton, 111 Idaho 61, 720 P2d 649 (Idaho Ct App) (same); Township of Jefferson v Block 447A, Lot 10, 228 NJ Super 1, 548 A2d 521 (App Div) (holder of prior tax sale certificate entitled to actual notice despite failure to comply with request procedure); and United States v Malinka, 685 P2d 405, 408-409 (Okla Ct App) (Mennonite places the onus on the State to provide notice notwithstanding availability of request/notice procedures); but see, Note, The Constitutionality of Request Notice Provisions in In Rem Tax Foreclosures, 56 Fordham L Rev 1209 (1988) (request notice provisions strike a reasonable balance between the interests of the State and the rights of property owners).

. No filing fee is required, and no renewal is necessary.