(No. 35166.—

LEONARD LIEPELT, d/b/a Prairie View Feed Mill, Appellant, *vs.* ARCH BAIRD, Appellee.

*Opinion filed September 24, 1959—Rehearing denied Nov. 16, 1959.*

NATHAN SHEFNER, of Chicago, for appellant.

RUSSELL & BRIDEWELL, of Chicago, (DAVID A. BRIDEWELL, WILLIAM A. BLACK, and ARTHUR D. VOGEL, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Lake County which vacated a prior money judgment and set aside a sheriff's deed obtained through an attachment sale of real estate in execution of such judgment.

A chronology of this litigation is necessary for a proper understanding of the case. On June 12, 1956, the plaintiff,

Liepelt, filed his attachment bond, affidavits of attachment and nonresidence, and obtained a writ of attachment on certain Lake County farm land owned by defendant, Arch Baird. On July 16, Liepelt filed a complaint against Baird for the price of certain feed, and sought service by publication. On August 1, 1956, a default judgment for $977.95 was entered against Baird. A sheriff's sale of the realty resulted in its purchase by Liepelt for $1,085.75 and deed was issued to him in December, 1957. In March, 1958, Baird filed a complaint against Liepelt seeking to vacate the original money judgment and to set aside the sheriff's deed, and in May, 1958, he sought the same relief by a petition filed in the original cause under section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1957, chap. 110, par. 72.) The two cases were consolidated for trial and, after an all-day hearing before the court, a decree was entered vacating the money judgment, setting aside the sheriff's deed, and ordering an accounting of the amount due Liepelt. From this decree he appealed directly to this court, a freehold being involved.

Liepelt contends that the trial court erred in finding that he failed to make diligent search and inquiry to ascertain the place of residence of Baird before executing the affidavits of attachment and nonresidence; that the sheriff's sale thereunder should have been sustained; and that Baird is not entitled to equitable relief because of the long delay in asserting his rights. Baird urges that the affidavits of attachment and nonresidence were false, the sale thereunder void, and that he had no notice of the proceedings.

Liepelt's attachment affidavit set forth "that the said Arch Baird is not a resident of this state, and that upon diligent inquiry affiant has not been able to ascertain his place of residence so that process cannot be served upon him, has departed from this State, with the intention of having his effects removed from this State," and his affidavit of nonresidence stated that Arch Baird "resides out

of this State and on due inquiry cannot be found  *  *  * that upon diligent inquiry his place of residence cannot be ascertained  *  *  *  that the last known place of residence of such defendant is 215 South Kildare Avenue, Chicago, Illinois,  *  *  *."

The testimony taken at the hearing relative to the residence of Baird and his actual knowledge of the proceedings was in direct conflict.

Baird testified that for ten years he lived on the Lake Zurich farm which was the subject of this attachment proceeding; that he was a pharmacist at the Austin Drug & Truss Company, 5756 Chicago Avenue, in Chicago for seven years, and prior thereto he worked as a pharmacist in the loop store of Sears and Roebuck; that from 1955 through 1957 he operated and lived on the farm; and that he did some building there during 1956 and had telephone service. He further testified that in September, 1956, he received mail at the Lake Zurich address; that he usually slept at the farm during 1956, but spent some nights with his son at 215 South Kildare Avenue in Chicago, when he came into the city with produce; that he had not resided outside of Illinois for five years; that he had left the State only for the purpose of going to Clinton, Iowa, once each month; and that he had not been outside of Illinois for more than three consecutive days during the last five years.

Three witnesses, who were old friends of Baird, testified that they had worked part time for him on the farm during June, July and August of 1956, and that Baird then lived on the farm.

Liepelt testified that he went to Baird's farm "several times," and on "different occasions" to locate Baird, but found no signs of life; that he had not seen Baird on the farm since 1953; that he made two trips to the farm with his attorney after judgment was obtained, but no one was there; that he supplied Baird with feed from 1950 to 1953 and was requested to and did send statements to him

at 215 South Kildare Avenue in Chicago; and that in October, 1952, he sent Baird a statement for $1,080, and in February, 1953, Baird personally paid $300 on the account by check. Liepelt further testified that Baird then said he had to go out of the State, but didn't know how long he would be away; that he saw Baird in the drug store on Chicago Avenue and also at the Kildare Avenue address and sent four statements to him at the latter address after February, 1953, none of which were returned; and that he had heard that Baird was living on the farm. He admitted that he did not know whether Baird had ever left the State in the last five years.

Liepelt's attorney testified that prior to filing suit in June, 1956, he wrote to Baird at the Kildare Avenue address, but not at the Lake Zurich farm; that he checked for phone listings in the name of Arch Baird but found none; and that he went to the farm with Liepelt the first two Sundays in June, 1956, and found no one there. However, Liepelt testified that he did not go to the farm with his attorney until after judgment. Neither Liepelt nor his attorney attempted to locate Baird at the drug store on Chicago Avenue.

While Baird denied that he knew of these proceedings, or received any notice pertaining thereto prior to February, 1958, both Liepelt and his attorney testified that in August, 1956, Baird approached them and offered to satisfy the judgment by giving his promissory notes and arranging for their discount at Liepelt's bank. Baird denied such conversation.

After examining all of the testimony and noting its inconsistencies, the trial judge found that on June 12, 1956, Baird was a resident of the State and was present so that personal service could have been had upon him; that plaintiff did not make diligent inquiry to ascertain Baird's residence; and that Liepelt should have known that the affidavits of attachment and nonresidence were false. The

court further found that Baird had no notice of the proceedings, and that the judgment against him was void.

We have carefully examined the record with respect to the affidavits of attachment and nonresidence. An affidavit for attachment is insufficient if it does not set forth a statutory ground for the issuance of the writ. (Ill. Rev. Stat. 1957, chap. 11, par. 1; *Gilbert* v. *Estate of Yunk*, 214 Ill. 237.) In the case at bar, the affidavit sets forth but two grounds: first, that Baird was a nonresident of Illinois, and second, that he had departed the State with intention of having his effects removed therefrom. The evidence establishes that the factual allegations of the affidavit of attachment relative to each ground were false.

Baird and three witnesses testified that he had resided at the farm during the period of time in question and he testified that he had not been out of the State for more than three days at a time in the last five years. Liepelt admitted that he had no factual basis for his sworn statements except that he couldn't locate Baird and that Baird had told him in February, 1953, that he was going out of the State to settle an estate and didn't know how long he would be gone.

The record supports the trial court's determination that Baird was not a nonresident, had not left the State with the intention of removing his effects therefrom; and that Liepelt knew or should have known that the statements to the contrary in the affidavits of attachment and nonresidence were false. The testimony likewise supports the finding of the trial court that Liepelt failed to make diligent inquiry to ascertain Baird's residence. We think it especially significant that Liepelt neither inquired at the Chicago Avenue drug store where he had previously seen Baird, nor made diligent inquiry among the neighbors near the Lake Zurich farm.

Diligent inquiry is such inquiry as a diligent man, intent upon ascertaining a fact, would ordinarily make. It is

inquiry made with diligence and good faith to ascertain the truth. (*Shockley* v. *Good,* 13 Ill.2d 298; *Van Matre* v. *Sankey,* 148 Ill. 536.) It must be an inquiry as full as the circumstances of the situation will permit. (*Shockley* v. *Good,* 13 Ill.2d 298; *Callner* v. *Greenberg,* 376 Ill. 212; *Graham* v. *O'Connor,* 350 Ill. 36.) The evidence fails to show diligent inquiry in the light of these rules.

Liepelt contends that Baird had actual notice of these proceedings, but failed to appear and defend or to redeem from the attachment sale; and that because of such failure he is not entitled to equitable relief. He relies on the written notice sent to the Kildare Avenue address, Baird's former mailing address, and upon alleged conversations between himself, his attorney and Baird in August, 1956. Baird denied that he received the written notice and the record contains no evidence that he then lived at that address. In fact, the testimony offered by Liepelt was that the people at the Kildare Avenue address did not know of Baird's whereabouts. The testimony of Liepelt and his attorney is in direct conflict with that of Baird with reference to the alleged conversations in August of 1956; they stated that Baird said he knew of the judgment, and Baird denied that such conversation ever took place.

We have examined the conflicting evidence, and it is apparent that the trial judge was compelled to accept the testimony of some witnesses and reject that of others. This he did and found as a matter of fact that Baird did not have notice of these proceedings. In a case of this nature, the trial court is in a position far superior to that of this court in determining where the truth lies and its findings will not be disturbed unless they are manifestly against the weight of the evidence. (*Northern Trust Co.* v. *City of Chicago,* 4 Ill.2d 432; *Eleopoulos* v. *City of Chicago,* 3 Ill.2d 247; *Wynekoop* v. *Wynekoop,* 407 Ill. 219.) We find nothing in this record to justify us in substituting our judgment for that of the trial court.

Since the findings of the trial court are sustained by the evidence, it follows that the attachment, judgment and sale were void and were properly set aside in this proceeding between the original parties. The decree of the trial court is accordingly affirmed.

*Decree affirmed.*