WILLIAM PENNINGTON, Plaintiff-Appellant, *v.* LOUISE PENNINGTON, Defendant-Appellee.

(No. 60287;

First District (3rd Division)—March 20, 1975.

Edward J. Paluch, of Chicago, for appellant.

Herbert A. Glieberman and Jerome Marvin Kaplan, both of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Louise Pennington, filed a petition to vacate a 1956 divorce decree obtained by the plaintiff, William Pennington. The trial court found that plaintiff had committed a fraud upon the court by a false affidavit of nonresidence, and entered an order vacating the decree and dismissing plaintiff's complaint for divorce with prejudice. Plaintiff appeals, contending that the trial court was without jurisdiction to grant relief after more than 2 years from the entry of the decree and that the affidavit of nonresidence fully complied with the statutory requirements for service by publication on a nonresident defendant. The facts follow.

On April 2, 1956, plaintiff filed a complaint for divorce against defendant, alleging desertion. The affidavit of nonresidence executed by plaintiff's attorney was also filed and stated: "[D]efendant resides out of this State and on due inquiry cannot be found so that process cannot be served upon Louise Pennington that upon diligent inquiry her place of residence cannot be ascertained; and affiant further states that the last known place of residence of such defendant is 48 Mooreland Street, Springfield, Massachusetts." Defendant did not appear and a default decree for divorce was entered on May 31, 1956.

On October 11, 1973, defendant filed the instant petition to vacate the divorce decree, alleging that she had never received notice, either actual or constructive, of the filing of the divorce complaint. Defendant alleged that at the time of the affidavit of nonresidence plaintiff knew, or reasonably could have known, the last known address of defendant; that the affidavit listed her as having resided at an address which plaintiff knew was not and had never been her residence; that plaintiff communicated with defendant prior and subsequent to the entry of the decree but never informed her of the decree; that defendant had a meritorious defense and did not learn of the entry of the decree until October 1972.

At a hearing on the petition defendant testified that she and plaintiff were married in Florida on January 5, 1935, and that their marriage was punctuated by frequent absences of plaintiff. In 1946 plaintiff left the family home in Massachusetts and went to Florida where he married a woman named Viola Tuttle. In 1947 defendant forgave plaintiff and he returned to the family home. The marriage to Viola Tuttle was annulled in 1948. In 1955 plaintiff again left defendant and moved to Chicago, Illinois. Defendant met briefly with plaintiff when she passed through Chicago in 1959, at which time he was with another woman, but he

did not identify the woman as his wife. In 1963 defendant saw plaintiff at his mother's funeral in Massachusetts, at which time plaintiff was accompanied by the same woman, but again did not identify her as his wife. In 1962 and 1965 plaintiff returned for visits of one or two months' duration with defendant. He was alone on these occasions. Defendant stated that in his communications with her before and after May 31, 1956, plaintiff never informed her that he was either seeking or had obtained a divorce. She first learned in October 1972 that a decree had been entered when her application for Social Security benefits was rejected.

Defendant testified that she is presently living at 220 White Street in Springfield, Massachusetts, where she has lived since March 1, 1956, except for a period in 1965 when she lived in Ludlow, a suburb of Springfield. Defendant further stated that she "believed" that on April 2, 1956, she was living in a house on Montmorency Street in Springfield, and she recalled that plaintiff had written to her and telephoned her at that residence. She denied ever having lived at 48 Mooreland Street in Springfield, or that plaintiff had ever visited her at that address. On cross-examination defendant admitted that she was aware 11 years ago that plaintiff was living with another woman in Chicago whom he held out to be his wife. She added, however, that she had never had any actual knowledge of the entry of a divorce decree. Defendant stated that prior to moving to 220 White Street in Springfield, Massachusetts, on March 1, 1956, she had lived at 50 Highland Park, Thompsonville, Connecticut.

Defendant identified four letters received in evidence as Plaintiff's Exhibits 1, 2, 3 and 4. Exhibit 1 is a letter from defendant to plaintiff dated January 30, 1963, in which she states that she is wrong for going behind the back of plaintiff's wife in talking to plaintiff and that plaintiff should try and be happy with Lisa. Exhibit 2 is a letter from defendant dated December 13, 1959, which commenced with "My dear Bill and Mrs. Pennington," and states that she realizes she was wrong in calling plaintiff on the telephone because he is no longer her husband. Exhibit 3 is an undated note on the back of a typewritten copy of a declaration addressed "to whom it may concern" and containing defendant's name, setting forth her address as 50 Highland Park, Thompsonville, State of Connecticut. It states that defendant is agreeable to any action for divorce that plaintiff may commence against her in the State of Illinois and does not intend to contest said action. The declaration contains a form of acknowledgment to be notarized with the date of March 6, 1956. Defendant states in the handwritten note that she is sending the declaration copy "in regards to the divorce," and that she will forward a signed and notarized original if the copy meets with plaintiff's approval. Defendant further writes that she hopes plaintiff will do nothing before the impend-

ing marriage of their daughter Bredine, for she knows nothing of the agreement between them and is expecting plaintiff to attend her marriage ceremony. Exhibit 4 is an envelope and an accompanying letter which defendant sent plaintiff via general delivery in Chicago. Although the letter is undated, the envelope bears a postmark indicating its arrival in Chicago on August 30, 1956, and gives defendant's return address as 50 Highland Park, Thompsonville, Connecticut.

Bredine Carpenter, daughter of plaintiff and defendant, testified that plaintiff absented himself from the family home for extended periods of time. She saw him in Chicago in 1958 when she and defendant were passing through the City and again at the funeral of plaintiff's mother in Massachusetts in 1963. On both occasions plaintiff was with another woman but he did not identify her as his wife. Bredine Carpenter saw plaintiff in 1962 and 1965 when he returned for brief visits with defendant. She further testified that in 1953 plaintiff was living at home with her and defendant at 42 Montmorency Street in Springfield, Massachusetts. In 1963 plaintiff visited defendant at the latter's residence at 220 White Street in Springfield. Later, Mrs. Carpenter purchased the White Street residence from defendant. In 1965 plaintiff again visited defendant who was then living in Ludlow, Massachusetts. Mrs. Carpenter stated that plaintiff never told her, nor did she ask, about a divorce from defendant.

Samuel Pennington, son of plaintiff and defendant, testified that plaintiff visited defendant at the latter's home in 1957, at which time he was in the company of another woman whom he introduced as Nellie Coons, but did not identify her as his wife. The witness further stated that plaintiff never informed him that he was divorced from defendant.

Plaintiff testified that he has lived in Chicago with his present wife Lisa for the last 18 years. In 1959 defendant wrote, stating that she was planning to seek a divorce. In 1963 Lisa Pennington accompanied plaintiff to his mother's funeral in Massachusetts, where he introduced her to his children, Samuel and Bredine. He stated that on at least two occasions he overheard telephone conversations between Lisa Pennington and defendant. He further testified that prior to filing the complaint for divorce he learned from his associates in the trucking business who knew defendant's relatives, that defendant was living at 48 Mooreland Street in Springfield, Massachusetts. Although he had never visited her at that address he knew that she had always lived in the Springfield area. He stated on cross-examination that he could not recall who told him defendant was living on Mooreland Street. He admitted that he received Exhibit 3 which listed the address of 50 Highland Park, Thompsonville,

Connecticut, but could not recall whether he took any steps to ascertain if that was defendant's current address.

At the conclusion of the testimony the trial court made an oral finding that plaintiff had committed fraud on the court by filing a false affidavit of nonresidence in that he should have known the defendant's address when the affidavit was filed. An order was entered which vacated the decree for divorce and dismissed plaintiff's divorce complaint with prejudice.

## I.

■■ Plaintiff contends that it was mandatory for defendant to petition the court for relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72) within 2 years of the entry of the decree, and that the court therefore erred in vacating the decree after a lapse of 17 years. Section 72, which abolished the common-law remedies for relief from final orders, judgments and decrees in civil cases, provides a unified procedure for such relief. The 2-year limitation contained therein applies only where the order, judgment or decree is challenged as erroneous or voidable. By its own terms it has no application to cases where the order, judgment or decree is challenged as void (Ill. Rev. Stat. 1973, ch. 110, par. 72(6)). Where the order, judgment or decree is challenged as void it may be attacked at any time. (*Lebanon Trust & Savings Bank v. Ray* (1973), 10 Ill.App.3d 345, 293 N.E.2d 623.) Where a defendant has not been served with process as required by law and has not entered an appearance, the court has no jurisdiction of the defendant and a judgment entered against him is void, and a decree or judgment obtained by fraud may be attacked at any time. *Hustana v. Hustana* (1959), 22 Ill.App.2d 59, 159 N.E.2d 265.

In the instant case, defendant has alleged in part that plaintiff committed a fraud upon the court in the original proceeding by filing a false affidavit of nonresidence; that the court never acquired jurisdiction over defendant; and that the decree so entered is void. Defendant specifically alleged that plaintiff knew or could have known her last address and that the last known address in the affidavit was one which plaintiff knew was not and had never been defendant's place of residence. The trial court found that plaintiff filed a false affidavit of nonresidence in that he should have known defendant's address at the time his affidavit was filed. However, upon our review of the record, we conclude that this finding was contrary to the manifest weight of the evidence.

■■ Section 14 of the Civil Practice Act provides for service by publication upon a nonresident defendant in cases affecting property or status within the State, and states in pertinent part:

"* * * plaintiff or his attorney shall file, at the office of the clerk of the court in which his action is pending, an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his place of residence cannot be ascertained * * *."

The phrases "on due inquiry" and "upon diligent inquiry" were not included within the statute as pro forma expressions which require only perfunctory performance; rather, they mandate an honest attempt to ascertain the whereabouts of a defendant by inquiry as full as the circumstances will permit. *Liepelt v. Baird* (1959), 17 Ill.2d 428, 161 N.E.2d 854; *City of Chicago v. Leakas* (1972), 6 Ill.App.3d 20, 284 N.E.2d 449.

In the instant case the trial court found that at the time the affidavit of nonresidence was filed, plaintiff should have known defendant's address. However, the record is contradictory concerning where the defendant lived on April 2, 1956, and as to how long she had resided there. Defendant testified that she "believed" she was living on Montmorency Street in Springfield, Massachusetts, on April 2, 1956. On cross-examination she testified that for the year prior to March 1, 1956, she had resided at 50 Highland Park, Thompsonville, Connecticut, on which date she moved to 220 White Street in Springfield, Massachusetts. Defendant's correspondence to plaintiff (Plaintiff's Exhibits 3 and 4) reflects that she was still living at the Thompsonville address in March and August of 1956. Further, both defendant and her daughter testified that plaintiff did not visit defendant from 1955 to 1962. Plaintiff testified that from personal knowledge he had known defendant to have always resided in the Springfield, Massachusetts, area. He stated that he learned from his business associates who knew defendant's relatives in Springfield that she was living at 48 Mooreland Street in that city. Contrary to defendant's characterization, plaintiff's statement that he could not recall specifically who told him of defendant's address, is not so incredible in light of the 17 years which had elapsed between the filing of the affidavit and the instant petition. In addition, the fact that the plaintiff's affidavit of nonresidence contained a last known address of defendant, albeit an allegedly incorrect one, evidences a certain diligence in attempting to ascertain the defendant's whereabouts.

In *People v. National Builder's Bank* (1956), 10 Ill.2d 121, 139 N.E.2d 262, the plaintiff urged that the failure to list a last known address was defective and resulted in a false affidavit of nonresidence. The court there held that section 14 does not require that an affidavit of nonresidence include a last known address but only the current place of resi-

dence, if known, and therefore, since such information was not required, no error could have resulted from its absence. In *McEvilly v. Brownfield* (1913), 258 Ill. 49, 101 N.E. 229, the court held that an affidavit of non-residence which states unequivocally that certain defendants are non-residents of the State of Illinois and states the place of residence on information and belief is sufficient. The court there stated: "The statute does not require the complainant to make a tour of foreign States to verify information as to the residence of defendants, in order that he may be able to state in his affidavit, on personal knowledge, the residence of such defendants." 258 Ill. 49, 51.

■■ The inclusion of the last known address obviously improves the likelihood that a nonresident defendant will receive actual notice of the pendency of an action against him inasmuch as the clerk is required to send a copy of the publication by mail addressed to each defendant whose residence is stated in such affidavit. Defendant urges in the instant case that plaintiff's lack of diligence is evidenced by his own admission that he received Exhibit 4 (defendant's general delivery letter), bearing a Thompsonville, Connecticut, return address; however, that envelope indicates on its face that it was not received by the post office in Chicago until August 30, 1956, 3 months after the divorce decree had been entered. The evidence does not support the conclusion that plaintiff knew or should have known defendant's address at the time of the affidavit. Her actual place of residence on that date has not been sufficiently established, and lack of diligence on the part of plaintiff has not been shown. The evidence fails to support a finding of a wilful or intentional false affidavit on the part of plaintiff or that plaintiff committed a fraud upon the court. The finding is against the manifest weight of the evidence, and the trial court therefore erred in vacating the decree and dismissing the case with prejudice.

## II.

The instant petition alleged that defendant had a meritorious defense to plaintiff's complaint for divorce and that plaintiff has never informed her of the entry of the divorce decree. In contending that she has a meritorious defense defendant challenges the divorce decree as erroneous and voidable. As such, her petition is in the nature of a petition under section 72 of the Civil Practice Act. (*Goldstick v. Saporito* (1974), 22 Ill.App.3d 621, 317 N.E.2d 774.) Subsection (3) of section 72 provides that the time during which a ground for relief from an order, judgment or decree is fraudulently concealed shall be excluded in computing the 2-year limitations period.

Defendant filed the instant petition more than 17 years after the entry

of the decree, and is barred unless the grounds for relief were fraudulently concealed. In *Nogle v. Nogle* (1964), 53 Ill.App.2d 457, 464, 202 N.E.2d 683, a petition under section 72 to vacate a divorce decree was filed 2 years and 5 months after entry of the decree alleging concealment of true worth which culminated in the settlement agreement incorporated therein. The court stated:

> "The concealment of a cause of action which will prevent the operation of the statute of limitations must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence by a person liable does not amount to fraudulent concealment of the cause of action. Such concealment must consist of affirmative acts or representations; there must be some trick or contrivance or affirmative action intended to exclude suspicion and prevent inquiry. 25 ILP 'Limitations,' Section 92 at 267, 268." 53 Ill.App.2d 457, 464.

Defendant here alleges in her petition that plaintiff fraudulently concealed the entry of the divorce decree, but the trial court made no finding of fact as to that allegation. We conclude, however, that the uncontroverted evidence of record establishes as a matter of law that the entry of the divorce decree was not fraudulently concealed from defendant. In her testimony defendant admitted that for 11 years she knew plaintiff was holding out another woman in Chicago as his wife. Defendant's letters to plaintiff in 1963 and 1959 (Plaintiff's Exhibits 1 and 2) disclosed that defendant believed she was no longer plaintiff's wife and that she considered him as having a new wife, Lisa Pennington. Plaintiff's Exhibit 3 further indicates that defendant had knowledge of and even acquiesced in plaintiff's plans for seeking a divorce in Illinois at a time contemporaneous with the filing of the divorce complaint herein.

■■ The evidence here does not disclose any affirmative acts or representations on the part of plaintiff intended to exclude suspicion and prevent inquiry. The mere silence of plaintiff and the mere failure on the part of defendant to learn of the grounds for relief do not amount to such fraudulent concealment. Under all the circumstances this record cannot support the finding of fraudulent concealment. As a result, the 2-year limitation is not tolled, and the petition is therefore barred.

For the reasons stated, the order of the circuit court vacating the decree for divorce and dismissing plaintiff's complaint for divorce with prejudice is reversed.

Reversed.

DEMPSEY and McNAMARA, JJ., concur.